UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Sharestates Investments, LLC<br>11 Middle Neck Road, Suite 400A<br>Great Neck, NY 110021,<br><br>    Plaintiff,<br><br>vs.<br><br>O.N.C.E. Appraisals, LLC<br>    Serve on Kevin King, Resident Agent<br>    10462 Faulking Ridge Circle<br>    Columbia, MD 21044,<br><br>Kevin King, Individually<br>10462 Faulkner Ridge Circle<br>Columbia MD 21044-2223,<br><br>Marcus Dockery, Individually<br>1250 Conn. Ave NW Ste 200<br>Washington DC 20036-2643,<br><br>Greenhall Capital Partners, LLC aka Greenhall Capital<br> Partners, LP,<br>    Serve on Andrew Mills, Resident Agent<br>    333 2nd St. NE<br>    Washington DC 20002-5737,<br><br>Otis N. Ofori, Esquire, Individually,<br>2200 Pennsylvania Avenue, NW<br>Suite 4018- East Tower<br>Washington, DC 20037-1294,<br><br>    Defendants. | Civil No. _____<br>              (\_\_\_\_) |

COMPLAINT

Plaintiff, Sharestates Investments, LLC, by its attorney, William Mark Rudow, Esquire and the Law Office of Hunter C. Piel, LLC, sues O.N.C.E. Appraisals, LLC, Kevin King, individually, Marcus Dockery, individually, Greenhall Capital Partners, LLC aka Greenhall Capital Partners, LP, and Otis N. Ofori, Esquire, individually, Defendants, and says:

PARTIES

1. Sharestates Investments, LLC, does business at 11 Middle Neck Road, Suite 400A, Great Neck, NY 110021 ("Plaintiff," "Mortgagee," or "Lender").

2. Defendant, O.N.C.E. Appraisals, LLC has a principal place of business at 10462 Faulking Ridge Circle, Columbia, MD 21044 ("ONCE").

3. Defendant, Kevin King, does business at 10462 Faulkner Ridge Circle, Columbia MD 21044-2223 ("King").

4. Defendant, Marcus Dockery, does business at 1250 Conn. Ave NW Ste 200, Washington DC 20036-2643 ("Dockery").

5. Defendant, Greenhall Capital Partners, LLC aka Greenhall Capital Partners, LP has its principal place of business, and is incorporated, in the District of Columbia ("Greenhall").

6. Defendant Otis N. Ofori, Esquire, does business at 2200 Pennsylvania Avenue, NW, Suite 4018- East Tower, Washington, DC 20037-1294 ("Ofori").

## JURISDICTION & VENUE

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between plaintiff and defendants and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

## FACTS

### THE TRANSACTION

9. On or about August 21, 2015, Cape Point Group, LLC ("Buyer") of 10620 Sweetbriar Parkway, Silver Spring, MD 20903 purchased ("Purchase") 106 13th Street SE, Washington, District of Columbia 20003 ("Property") for $3,200,000.00 ("Purchase Price"), as evidenced by a Warranty Deed ("Deed") executed on August 21, 2015.

10. Prior to August 21, 2015, the Buyer requested, pursuant to a loan application, that the Plaintiff lend $2,560,000.00 to fund part of the purchase of the Property for $3,200,000.00.

11. The Lender's agreement to lend the lessor of 80% of the purchase price or the appraised "as is" value ("Appraisal Reliance") is partially documented by that term sheet letter dated July 15, 2015, from the Plaintiff to the Buyer ("Term Sheet").

12. On August 21, 2015, the Lender lent the Buyer $2,560,000.00 to purchase the Property ("Loan"); this was documented by a Promissory Note, dated August 21, 2015.

13. Repayment of the Loan was assured by the Buyer's granting the Plaintiff a security interest in the Property; this was documented by that Mortgage, Assignment of Leases and Rents and Security Agreement, dated August 21, 2015 ("Mortgage").

14. Since the Lender was funding $2,560,000.00 of the $3,200,000.00 sales price, an additional $640,000.00 was necessary for the Buyer to complete the transaction ("Cash at Closing").

15. Since closing costs, like the transfer taxes, also existed, the Buyer should also have had to bring additional funds to closing; the term Cash at Closing includes these additional funds.

16. The Lender expected the Buyer to use its own funds to pay for the Cash at Closing.

17. On or about August 20, 2015, Greenhall wired $875,000.00 on behalf of Cape Point Group, LLC to the escrow company for the Cash at Closing.

18. At all relevant times, Defendant Otis N. Ofori, Esquire, acted as counsel for the Buyer regarding the Property purchase.

19. Ofori, inter alia, sent the form of the Deed, Transfer Doc and seller's Operating Agreement to the escrow company as well as wiring instructions for the escrow company to wire funds to the Property seller.

20. Unbeknownst to the Lender, upon information and belief, Ofori was also covertly acting as agent for Greenhall, documented a $560,000.00 loan from the Buyer for the purchase of the Property ("Hidden Loan"), and secured by the Property; see that Deed of Trust, Security

Agreement, Assignment of Leases and Rents and Fixture Filing dated October 15, 2015, but notarized on December 31, 2015, and recorded in the Official Records of the Washington DC Recorder of Deeds Ida Williams on January 8, 2016 ("Hidden DOT"). The Hidden DOT specifically noted on the second page that it was for *repayment of a certain **purchase money indebtedness*. [Emphasis Added] The Hidden DOT had a return address for Greenhall at Ofori's office.

21. The Lender's belief of the loan structure was, inter alia, identified in a Commitment for Title Insurance, effectively dated July 13, 2015, by Atlantis National Services ("Commitment").

22. Commitment Schedule A identified all loans that were identified as part of the Purchase funding; for instance, the Plaintiff's Mortgage was identified in paragraph numbered 12. b).

23. The Hidden Loan and Hidden DOT were not identified on the Commitment; in fact, Greenhall's name did not appear anywhere on the Commitment.

24. The loan structure was, inter alia, also identified in a closing disbursement instruction letter dated August 21, 2015, from the Buyer to the Plaintiff ("Closing Instructions").

25. The Hidden Loan and Hidden DOT were not identified on the Closing Instructions; in fact, Greenhall's name did not appear anywhere on the Closing Instructions.

26. The Hidden Loan was not identified anywhere in any settlement document or communication despite numerous communications from Ofori prior to and contemporaneous with the Purchase ("Omission of Material Fact 1").

27. At no time did the Buyer inform the Lender that it intended to take another loan to fund the purchase the Property in addition to the requested $2,560,000.00 loan from the Plaintiff.

28. Had the Lender known that the Buyer intended to incur the material Hidden Loan, it would not have funded the Loan.

29. At no time did the Buyer or Ofori inform the Lender that it intended to take on equity financing involving the change of ownership, to fund the $640,000.00 necessary to purchase the Property ("Hidden Equity Financing") in addition to the requested $2,560,000.00 loan from the Plaintiff ("Omission of Material Fact 2"); had the Lender known that the Buyer took on the Hidden Equity Financing, it would not have funded the Loan.

THE APPRAISAL

30. The Lender required the Loan to be secured by the Property so that if the Loan went into default, the Plaintiff would have collateral with which to reduce its losses.

31. Lender's policies and procedures, at the time of the Loan, inter alia, required a specific loan-to-value ratio ("LTV Requirement") of the property value to the loan amount as part of its underwriting requirements in order to approve a loan; the LTV was at least 80% of the loan amount.

32. Defendant ONCE, by its agents King and Dockerty, drafted an Appraisal of the Property on behalf of Howsoon Cham, the owner of Cape Point Group, LLC, dated 07/27/2015, and identified as Main File No. 10613THSTSE ("Appraisal") valuing the Property at $3,200,000.00.

33. The Buyer presented the Appraisal to the Plaintiff.

34. The Lender relied on an appraisal of the Property when it decided to approve and fund the Loan.

35. The Lender is the mortgagee and as such is an intended user of the Appraisal as stated in Statement of Contingent and Limiting Conditions Section, 8 ("Intended User Language").

> ***Neither all, nor any part of the content of the report, or copy thereof*** *(including conclusions as to the property value, the identity of the Appraiser, professional designations, reference to any professional appraisal organizations, or the firm with which the Appraisal is connected)**, shall be used for any purposes by anyone but** the client specified in the report, the borrower if appraisal fee paid by same, **the mortgagee** or its successors and assigns, mortgage insurers, consultants, professional appraisal organizations, any state or federally approved financial institution, any department, agency, or instrumentality of the United States or any state of the District of Columbia, **without the previous written consent of the Appraiser**; nor shall it be conveyed by anyone to the public through advertising, public relations, news, sales, or other media, without the written consent and approval of the Appraiser.*

[Emphasis Added]

36. The Mortgagee retained an expert to value the Property as of the Appraisal date; the Property should have appraised for $1,220,000.00 as of the Appraisal date.

37. The Appraisal inflated the Property by $1,978,000.00 – about 262%.

38. The Buyer failed to make payments as required under the Note.

39. The Lender accelerated the balance under the Note and demanded that the Buyer pay all outstanding funds, but the Buyer refused to do so.

COUNT 1 – APPRAISERS
O.N.C.E. APPRAISALS, LLC, KEVIN KING, INDIVIDUALLY & MARCUS DOCKERY, INDIVIDUALLY
TORT – NEGLIGENCE

40. Plaintiff adopts and incorporates by reference the allegations contained in paragraphs 1-39 of this Complaint.

41. Upon information and belief, Marcus Dockery, personally performed and/or reviewed the Appraisal and his name appears on the signature block as Appraiser #1.

42. Upon information and belief, Kevin King, personally performed and/or reviewed the Appraisal and his name appears on the signature block as Appraiser #2.

43. Marcus Dockery and Kevin King are identified on Appraisal Pages 6 and 7 as the Appraiser(s); Marcus Dockery's name appears on the Appraisal and Report Identification page as the Appraiser.

44. The Appraisal must meet the standard of care set forth in the Uniform Standards of Professional Appraisal Practice ("USPAP") as this is the degree of care, which a reasonably prudent person (appraiser) would have exercised under the same or similar circumstances.

45. The Mortgagee has privity of contract, or its equivalency, with ONCE, King and Dockerty (collectively, "Appraisers") as there is an intimate nexus between the Plaintiff as mortgagee and Appraisers as drafters of an appraisal expressly known to be used for the Loan or a substantially similar loan.

46. The Appraisers in violation of their uniform standard of conduct: that of reasonable care under the circumstances – USPAP in the case of an appraiser – in reaching a value conclusion that was inappropriate, unreliable, and grossly overstates the Property's value by $1,220,000.00 because it:

   A. ignores the income capitalization approach, the particularly relevant methodology ("Missing Income Approach"); and

   B. includes three comparable sales that are inappropriate and lead to an unreliable value; Comparables, as defined in the Appraisal, 1 and 3 reflect redevelopments and the purchase prices were not based on the existing improvements, but rather on land value for sites which were large enough to support redevelopment, as contrasted with the subject, whose site is too small and not zoned for commercial use. Comparable 2 reflects a far superior new construction building. The comparable sales used dramatically overstate the subject's as-is market value. Furthermore, the appraisal used the subject's gross building area, including the basement, as the basis for calculating the sales comparison approach value. It is not appropriate to use the subject's basement square footage in the sales comparison approach (collectively, "Improper Comparables").

47. The Appraisers, knew the express purpose of the Appraisal was for a mortgagee – Lender – to use said Appraisal in determining whether or not to make a loan to allow the buyer identified in the appraisal to purchase the Property.

48. As such, the Appraisers with special training and experience must adhere to a standard of conduct commensurate with such attributes and owed the Lender a duty to prepare the Appraisal using that degree of care and skill which is reasonable under the circumstances - a reasonably competent appraiser acting in similar circumstances - would use in preparing an appraisal of the Property.

49. This duty included, but was not limited to, complying with USPAP.

50. Upon completion of the Appraisal, the Appraisers certified that the Appraisal complied with USAP.

51. The Appraisers breached this duty and violated USPAP by not using the Missing Income Approach and using Improper Comparables.

52. The Lender reasonably relied on the Appraisal to determine the Loan Requirements, including specifically the LTV.

53. The Lender reasonably relied on the Appraisal to determine the value of the Property so it could limit its risks in making the Loan by having a secondary source of repayment if the primary source of repayment, the Buyer, defaulted and failed to pay the Loan.

54. But for Appraisers' violation of their professional obligations, the Lender would not have approved and funded the Loan the Loan amount, and would not have been damaged as set forth above.

55. The Lender's damages were proximately caused by the Appraisers' failure to use that degree of care and skill that a reasonably competent appraiser would have used in preparing an appraisal of the Property.

WHEREFORE, the Plaintiff seeks judgments against O.N.C.E. Appraisals, LLC, Kevin King and Marcus Dockery, jointly and severally, in the amount of:

    A.    $2,560,000.00, the principal balance due under the Note,

    B.    $854,264.46 in prejudgment interest, from August 21, 2015 to May 31, 2018, plus additional interest which accrues at the contract rate of 12% (1,015 days at $841.64 per diem),

    C.    court costs, service of process fees, and

    D.    such other and further relief as justice in this case may require.

### COUNT 2 – APPRAISERS
### O.N.C.E. APPRAISALS, LLC, KEVIN KING, INDIVIDUALLY & MARCUS DOCKERY, INDIVIDUALLY
### BREACH OF CONTRACT – THIRD PARTY BENEFICIARY

56. Plaintiff adopts and incorporates by reference the allegations contained in paragraphs 1-55 of this Complaint.

57. A valid contract existed as the Buyer requested that the Appraisers enter into a contract for the Appraisers to appraise the Property ("Appraisal Contract").

58. The Appraisers breached the Appraisal Contract by violating USPAP, inter alia, by not using the Missing Income Approach and using Improper Comparables.

59. The Appraisal Contract was made expressly for the benefit of the Plaintiff as mortgagee as is expressly noted in the Appraisal in the Intended User Language.

60. The Plaintiff as mortgage was intended to be the primary beneficiary of the Appraisal.

61. The Appraisers and Buyer clearly intended that the Mortgagee benefit from the Appraisal Contract.

62. The contract had an obligation or duty for the Appraisers to prepare the Appraisal in USPAP compliant manner.

63. The contract had an obligation or duty for the Appraisers to prepare the Appraisal that accurately valued the Property.

64. The Appraisers breached the Appraisal Contract, inter alia, by violating USPAP ("BOC 1").

65. The Appraisers breached the Appraisal Contract, inter alia, by inflating the value of the Property ("BOC 2").

66. BOC 1 and/or BOC 2 caused harm to the Lender in the amount of the Loan because the Lender would not have made the Loan had it known the properly appraised value of the Property.

67. In the alternative, the Appraisers BOC 1 and/or BOC 2 by inflating the value of the Property caused harm to the Plaintiff in the amount of $1,978,000.00 – the amount of the improperly inflated Property value.

68. The Lender demanded that the Appraisers pay the damages but the Appraisers refused to do so.

   WHEREFORE, the Plaintiff seeks judgments against O.N.C.E. Appraisals, LLC, Kevin King and Marcus Dockery, jointly and severally, in the amount of:

   A.   $2,560,000.00, the principal balance due under the Note,

  B. $854,264.46 in prejudgment interest, from August 21, 2015 to May 31, 2018, plus additional interest which accrues at the contract rate of 12% (1,015 days at $841.64 per diem),

  C. court costs, service of process fees, and

  D. such other and further relief as justice in this case may require.

COUNT 3 – APPRAISERS
O.N.C.E. APPRAISALS, LLC, KEVIN KING, INDIVIDUALLY & MARCUS DOCKERY, INDIVIDUALLY
TORT – NEGLIGENT MISREPRESENTATION

69. Plaintiff adopts and incorporates by reference the allegations contained in paragraphs 1-68 of this Complaint.

70. The Buyer contracted with Appraisers, for the Appraisal.

71. The Plaintiff's relationship with the Appraisers is such as to constitute an intimate nexus since, intended use of the Appraisal was for a finite class of one (1) person (the mortgagee) making a first mortgage loan secured by the real property appraised by Appraiser thus constituting privity of contract or its equivalent and entitling the Lender to rely on the Appraisal.

72. Alternatively, the Appraisers knew, or in the exercise of reasonable diligence should have known, that the Lender would rely upon the Appraisal when making a determination to approve and fund the Loan, and that if the Appraisal was erroneous, such errors would cause loss or injury to the Lender as measured by either the inflated value of the Property or the entire Loan balance.

73. The Appraisers negligently prepared the Appraisal and misrepresented material facts including, but not limited to, and violated USPAP by, not using the Missing Income Approach and using Improper Comparables.

74. The Appraisers negligently communicated false information to the Plaintiff in the form of the Appraisal by using Improper Comparables; also by failing to mention the Missing Income Approach, the Appraisers negligently failed to communicate necessary information in a false and misleading manner, this failure to disclose is, in essence a communication of false information.

75. Appraisers intended or should have recognized that the Plaintiff would likely be imperiled by action taken on reliance upon their misrepresentations by Lender and its underwriters in determining whether or not to make the Loan and/or the amount to make the Loan, based on the Loan Requirements, including without limitation LTV.

76. Appraisers knew that the Lender or a similarly situated lender would probably rely on their statements, which, if erroneous, will cause loss or injury to such person.

77. The Lender reasonable relied upon the false information and omission to his detriment by reasonably relying upon the representations of Appraiser in the Appraisal to determine the value of the Property so that it could limit its risks in making the Loan by having a secondary source of repayment if the primary source (Borrower) defaulted and failed to pay the Loan; an/or determine the loan amount using its LTV Requirement.

78. But for Appraisers' negligent misrepresentation, the Lender would not have approved or funded the Loan, and would not have been damaged as set forth above.

79. But for Appraiser's negligent misrepresentation, the Lender would not have had a viable secondary source of repayment to liquidate when the Borrower failed to pay the Loan.

80. The Lender's damages were proximately caused by Appraisers' negligent misrepresentation and failure to use that degree of care and skill, which a reasonably competent appraiser would have used in preparing an appraisal of the Property.

    WHEREFORE, the Plaintiff seeks judgments against O.N.C.E. Appraisals, LLC, Kevin King and Marcus Dockery, jointly and severally, in the amount of:

    A.    $2,560,000.00, the principal balance due under the Note,

    B.    $854,264.46 in prejudgment interest, from August 21, 2015 to May 31, 2018, plus additional interest which accrues at the contract rate of 12% (1,015 days at $841.64 per diem),

    C.    court costs, service of process fees, and

    D.    such other and further relief as justice in this case may require.

COUNT 4 – HIDDEN LOAN
GREENHALL CAPITAL PARTNERS, LLC AKA GREENHALL CAPITAL PARTNERS, LP,
AND OTIS N. OFORI, ESQUIRE
AIDING & ABETTING

81. Plaintiff adopts and incorporates by reference the allegations contained in paragraphs 1-80 of this Complaint.

82. Greenhall Capital Partners, LLC aka Greenhall Capital Partners, LP, and Otis N. Ofori, Esquire ("Greenhall Defendants") assisted the Buyer in duping the Lender into believing that the Cash at Closing was the Buyer's funds, that the Buyer did not make a loan secured by the

Property to obtain the Cash at Closing and that the Buyer did not give equity financing to obtain the Cash at Closing.

83. The wrongful acts performed by the Greenhall Defendants that caused the Plaintiff injury include the Omission of Material Fact 1 and Omission of Material Fact 2, and additionally, as to Ofori, hiding his representation of Greenhall regarding the Hidden Loan and/or Hidden Equity Financing.

84. The wrongful acts harmed the Plaintiff in the amount of the Loan as it would not have funded the Loan had it known the Omission of Material Fact 1 or Omission of Material Fact 2 or and additionally, as to Ofori, the hidden representation of Greenhall regarding the Hidden Loan and/or Hidden Equity Financing.

85. The Greenhall Defendants were generally aware of their role as part of an overall illegal or tortious activity (tricking the Lender into making the Loan by hiding the origin of the Cash at Closing) at the time that they provided the assistance - Cash at Closing, and additionally, as to Ofori, hiding his representation of Greenhall regarding the Hidden Loan and/or Hidden Equity Financing.

86. Execution of the Hidden Loan documents, including without limitation, Hidden Note and Hidden DOT was controlled by Defendant Ofori, inter alia, as evidenced by the Hidden DOT recording requested to be sent to 2200 Pennsylvania Avenue, NW, Washington, DC 20037, Mr. Ofori's address.

87. Greenhall Capital Partners, LLC, made the Hidden Loan aka Greenhall Capital Partners, LP.

88. The Cash at Closing was provided by Greenhall Capital Partners, LLC aka Greenhall Capital Partners, LP.

89. The Greenhall Defendants knowingly and substantially assisted the principal violation by failing to disclose the nature of their loan to the Buyer by failing to: disclose the Omission of Material Fact 1 or Omission of Material Fact 2 to the Lender, failing to record the Hidden DOT in a timely manner, and/or failing to execute the Hidden Loan documentation contemporaneously with making the Hidden Loan, and additionally, as to Ofori, hiding his representation of Greenhall regarding the Hidden Loan and/or Hidden Equity Financing.

90. The acts of the Greenhall Defendants constituted independent tortious conduct by rendering substantial assistance and/or encouragement to the Buyer.

91. The Buyer was the principal tortfeasor by orchestrating the Omission of Material Fact 1 or Omission of Material Fact 2 and using the omissions to trick the Lender into making the Loan in direct violation of its LTV and other underwriting requirements.

92. The Greenhall Defendants had actual knowledge of the aider and abettor of the wrongful conduct and each of their roles in furthering such conduct.

93. The Lender was harmed by the Greenhall Defendants in that it would not have made the Loan had it known the true source of the Cash at Closing and/or ramifications of the manner

in which the Cash at Closing was obtained – either debt or equity financing or that Ofori, hid his representation of Greenhall regarding the Hidden Loan and/or Hidden Equity Financing.

94. The amount of the harm is the loan balance.

WHEREFORE, the Plaintiff seeks judgments against Greenhall Capital Partners, LLC aka Greenhall Capital Partners, LP, and Otis N. Ofori, Esquire, jointly and severally, in the amount of:

    A.    $2,560,000.00, the principal balance due under the Note,

    B.    $854,264.46 in prejudgment interest, from August 21, 2015 to May 31, 2018, plus additional interest which accrues at the contract rate of 12% (1,015 days at $841.64 per diem),

    C.    $10,000,000.00 in Punitive Damages,

    D.    court costs, service of process fees, and

    E.    such other and further relief as justice in this case may require.

COUNT 5 – HIDDEN LOAN
GREENHALL CAPITAL PARTNERS, LLC AKA GREENHALL CAPITAL PARTNERS, LP,
AND OTIS N. OFORI, ESQUIRE
CIVIL CONSPIRACY

95. Plaintiff adopts and incorporates by reference the allegations contained in paragraphs 1-94 of this Complaint.

96. The Greenhall Defendants and Buyer (collectively, "Conspirators"), either individually or through their agents, entered into an agreement or understanding to accomplish the sale of the Property by the use of an unlawful act or an unlawful manner.

97. The unlawful act and/or means to do an unlawful act by the Conspirators, included: intentional misrepresentations regarding the Omission of Material Fact 1 or Omission of

Material Fact 2 and using the omissions to deceitfully avoid Plaintiffs' related underwriting requirements, including without limitation, LTV Requirement by falsifying the nature of ownership of the Cash at Closing, hiding Ofori's representation of Greenhall, as well as the ownership of the Buyer and debts of the Buyer;

98. As a direct, consequent and proximate result of the conspiracy of the Conspirators, the Lender was induced to fund the Loans to a non-creditworthy borrower – the Buyer – who did not have the ability to pay the Loan back even if he desired to do so, inter alia, directly due to the need to pay the Greenhall Capital Partners, LLC's Hidden Loan payments causing the Plaintiff injury by such overt acts;

99. These overt acts were done pursuant to and in furtherance of the common scheme.

100. As a result of these actions by Conspirators, the Lender has been damaged as set forth above.

    WHEREFORE, the Plaintiff seeks judgments against Greenhall Capital Partners, LLC aka Greenhall Capital Partners, LP, and Otis N. Ofori, Esquire, jointly and severally, in the amount of:

    A.    $2,560,000.00, the principal balance due under the Note,

    B.    $854,264.46 in prejudgment interest, from August 21, 2015 to May 31, 2018, plus additional interest which accrues at the contract rate of 12% (1,015 days at $841.64 per diem),

    C.    $10,000,000.00 in Punitive Damages,

    D.    court costs, service of process fees, and

E. such other and further relief as justice in this case may require.

/S/

William M. Rudow, Esquire
Law Office of Hunter C. Piel, LLC
5603 Newbury Street
Baltimore MD 21209
DC BAR Number: 417994
(410) 542-6000
Fax (410) 849-4889
Attorney for Plaintiff
WRudow@PielLawFirm.com